IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD D. REHAK, | ) |
| | ) No. 07-1314-HU |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) OPINION AND ORDER |
| | ) |
| | ) |
| WEST AMERICAN INSURANCE, | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

J. Gary McClain
Roger P. Mundorff
Mundorff and Kovac
11073 S.E. Main Street
Milwaukie, Oregon 97222
    Attorneys for plaintiff

William G. Earle
Cari Waters
Davis Rothwell Earle & Xochihua
1300 S.W. Fifth Avenue, Suite 1900
Portland, Oregon 97201
    Attorneys for defendant

HUBEL, Magistrate Judge:

Plaintiff Richard Rehak brings this action against his insurer, West American Insurance Company, requesting declaratory

OPINION AND ORDER Page 1

relief on the issue of whether the uninsured/underinsured motorist provision of a commercial policy issued to his business, Surefire Construction, covers an accident in which he was injured. Both parties move for summary judgment.

**Factual Background**

Plaintiff Richard Rehak (plaintiff Rehak) is the sole shareholder and president of an Oregon corporation, Surefire Construction, Inc. (Surefire). CSF ¶ 1. Surefire has three vehicles insured by defendant West American Insurance Company (West). The vehicles are a van, a flatbed truck, and a 1995 Ford pickup that is regularly used by plaintiff Rehak for commuting and transporting supplies to job sites. The pickup is leased by plaintiff Rehak's father. CSF ¶¶ 4, 5.

Plaintiff Rehak and his brother, John Rehak, an employee of Surefire, frequently drove together to a Surefire job site in The Dalles in the 1995 Ford pickup, although sometimes they drove independently. CSF ¶ 4. Plaintiff Rehak did not use the 1995 Ford pickup as a personal vehicle. Affidavit of Richard Rehak ¶ 9. On a few occasions before October 13, 2004, plaintiff Rehak and John Rehak used John Rehak's personal vehicle, a 1998 GMC Jimmy, to drive to and from The Dalles when the 1995 Ford pickup was not available. CSF ¶ 4.

On October 13, 2004, the 1995 Ford pickup was being repaired in Vancouver, Washington. CSF ¶ 6. Plaintiff Rehak asked John Rehak if they could use John Rehak's Jimmy to drive to the job site. CSF ¶ 6. They agreed that Surefire would pay for the gas and compensate

OPINION AND ORDER Page 2

John Rehak for mileage. Id. Plaintiff Rehak drove John Rehak's Jimmy to the jobsite, with John Rehak as a passenger. Affidavit of Richard Rehak ¶ 15.

After plaintiff Rehak and John Rehak arrived at the work site in The Dalles, they left the site to drive to Home Depot. Plaintiff Rehak states that he had instructed his brother to go to the Home Depot store in The Dalles so that they could purchase nails and screws that were needed at the jobsite. Affidavit of Richard Rehak ¶ 17. John Rehak was driving the Jimmy and plaintiff Rehak was a passenger. On the way, an accident occurred. CSF ¶ 7. Both Rehaks were injured. Affidavit of Richard Rehak ¶ 18; CSF ¶ 8. The other driver was at fault in the accident. Affidavit of Richard Rehak ¶ 18. Plaintiff Rehak was paid the full liability limits of the other driver's policy, $25,000 and also received $25,000 from John Rehak's personal automobile insurer, American Commerce Insurance Co.

**Policy Provisions**

The issue is whether the Jimmy falls within the uninsured/underinsured motorist (UM/UIM) provision of Surefire's commercial insurance policy governing a "temporary substitute" for a covered automobile. The UM/UIM coverage endorsement obligates the insurer to

> pay all sums an "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle."

OPINION AND ORDER Page 3

The policy defines "insured" as

> Anyone <u>occupying</u> a covered "auto" or a temporary substitute for a covered "auto" ... out of service due to breakdown, repair, servicing, loss or destruction.

CSF ¶ 12 (emphasis added). The term "temporary substitute" is not defined in the policy. The UM/UIM endorsement provides coverage of up to $1 million per accident. Compare "Temporary Substitute Auto - Physical Damage Insurance" provision, CSF, Exhibit A, p. 32, which provides:

> If Physical Damage Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Physical Damage Coverage:
>
> Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
> a.  Breakdown;
> b.  Repair;
> c.  Servicing;
> d.  "Loss;" or
> e.  Destruction.

(Emphasis added).

**Discussion**

<u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff Rehak argues that under <u>Hoffman Const. Co. v. Fred S. James & Co.</u>, 313 Or. 464, 469 (1992), the governing rule for the construction of insurance contracts is to ascertain the intention of the parties. The term "temporary substitute" is not defined anywhere in the insurance policy. In <u>Hoffman</u>, the Oregon Supreme Court established a sequential test for interpreting the meaning of undefined terms in an insurance policy. <u>Id.</u> at 474. The first step is to determine the plain meaning of the words. <u>Id.</u> Plaintiff Rehak asserts that interpretation of "temporary substitute" can be

OPINION AND ORDER Page 4

resolved at this level.

Plaintiff Rehak cites to <u>Webster's New World Dictionary of the American Language</u> (Second Concise Edition), which defines "substitute" as "a ... thing serving or used in place of another," and "temporary" as "lasting for only a time; not permanent." Plaintiff Rehak argues that under these definitions, the Jimmy was a temporary substitute for the covered 1995 Ford pickup, because it was being used on October 13, 2004, in place of the 1995 Ford pickup while it was being repaired. Plaintiff points out that the Ford pickup was going to be returned to service as soon as it was repaired, and that Plaintiff Rehak met the definition of "insured" because he was "occupying" the Jimmy during that time.

Plaintiff Rehak argues that his interpretation of the UM/UIM coverage endorsement is consistent with other rules of interpretation in that it does not conflict with the other provisions of the policy, is a reasonable interpretation of the provision, and is consistent with the parties' intent, which is the protection of the insured. See <u>Hoffman</u>, at 468-70.[1] Plaintiff Rehak adds that if the provision contains any ambiguity, the ambiguity is to be construed against the insurer. <u>Id.</u> at 470.

<u>Defendant's Motion for Summary Judgment</u>

Defendant argues that the Jimmy was not a "temporary substitute" auto under the "seminal case," <u>Tanner v. Pennsylvania</u>

---

[1] Defendant agrees that the purpose of the temporary substitute auto provision is to allow an insured, whose vehicle is being repaired, to use a temporary substitute automobile and have coverage under the policy, citing <u>O'Quinn v. Maryland Auto. Ins. Fund</u>, 850 A.2d 386, 392 (Md. App. 2004).

OPINION AND ORDER Page 5

Threshermen & Farmers' Mutual Casualty Ins. Co., 226 F.2d 498 (6th Cir. 1955). Defendant asserts that this case stands for the proposition that a temporary substitute vehicle must be in the possession or control of the insured.

In Tanner, the named insured, Mike Zarzour (brother no. 1) operated a cafe and his brother Louis Zarzour (brother no. 2) operated a different cafe in the same city. When brother no. 1's car was being repaired, he borrowed brother no. 2's Mercury for business errands. Brother no. 1 returned the Mercury to brother no. 2, but asked brother no. 2 to get some meat for brother no. 1's cafe. Brother no. 2 went on this errand in the Mercury and also picked up his wife and child. During this trip, brother no. 2 was involved in an accident.

The court held that brother no. 2's car was not a temporary substitute auto under brother no. 1's policy because it was not "in the possession or under the control of the insured to the same extent and effect as the disabled car of the insured would have been except for its disablement." 226 F.2d at 500.

Tanner differs from this case in some significant respects: first, the named insured, brother no. 1, was not occupying brother no. 2's Mercury at the time of the accident; second, the Mercury was not being used exclusively for brother no. 1's purposes or at his direction; and third, brother no. 2 was not employed by brother no. 1, the insured, nor did he have any interest in brother no. 1's business.

///

Defendant argues that the "possession and control" test has been applied in other cases, including <u>Carnes v. Schram</u>, 440 NW2d 451 (Neb. 1989). But <u>Carnes</u>, like <u>Tanner</u>, is factually distinguishable because there was nothing in the record from which it could be inferred that the vehicle involved in the accident had been loaned to the insured or that the insured had even asked for its use. Nor was the insured occupying the vehicle at the time of the accident.

Defendant also cites <u>Deadwiler and Jenkins v. Chicago Motor Club Ins. Co.</u>, 603 N.E. 1365 (Ind. App. 1992). That case is distinguishable because 1) the insured was not in the car at the time of the accident; 2) the insured's daughter, who owned the car, was merely performing a favor for her mother, rather than a legal or contractual obligation of the insured, unlike the use of John Rehak's car at Plaintiff Rehak's direction for purposes of the business that employed them both; and 3) while John Rehak was driving the Jimmy as Plaintiff Rehak's designee in this case, the driver of the car in <u>Deadwiler</u>, the insured's daughter's boyfriend, was not driving as the insured's designee.

The facts of this case cannot be reconciled to the facts of <u>Tanner</u>, <u>Carnes</u> and <u>Deadwiler</u> because here Plaintiff Rehak was "occupying" the Jimmy at the time of the accident; the Jimmy had been driven by Plaintiff Rehak earlier in the day to the job site and was being used pursuant to Plaintiff Rehak's instructions and for a business purpose at the time of the accident; and the Jimmy was, at the time of the accident, being used in the same way and to

OPINION AND ORDER Page 7

the same extent that the 1995 Ford pickup would have been used had it been available that day. There is no evidence that, as in <u>Tanner</u>, the Jimmy was being used for any personal purpose of John Rehak's.

The "possession and control" standard advocated by defendant is inapplicable to the facts of this case and would require the court to add terms to the plain language of the policy. I conclude that the Jimmy was being used as a "temporary substitute" auto, so that Plaintiff Rehak was and is entitled to coverage under the UM/UIM provisions of defendant's insurance policy.

## Conclusion

Plaintiff's motion for summary judgment (doc. # 11) is GRANTED. Defendant's motion for summary judgment (doc. # 12) is DENIED.

IT IS SO ORDERED.

Dated this 30th day of <u>April</u>, 2008.

/s/ <u>Dennis James Hubel</u>
Dennis James Hubel
United States Magistrate Judge

OPINION Page 8